DAUKSCH, Judge.
Petitioner, State of Florida, Department of Highway Safety & Motor Vehicles (the Department), seeks from this court a writ of certiorari to quash the circuit court’s order, which granted respondent Joseph Johnson’s petition for writ of certiorari. The circuit court, in its review capacity, ruled that Johnson’s breath test results were erroneously considered by the Department’s hearing officer because the testing procedures used on his Intoxilyzer failed to comply with FDLE testing rules. We grant the petition.
Deputy Winters observed Johnson driving erratically and speeding. Upon stopping Johnson, Deputy Winters noticed that he had a moderate odor of alcohol on his breath. His eyes were glassy and very bloodshot, his speech slow and slurred.' He admitted to drinking before driving and performed poorly on three sobriety tests by failing to follow instructions, swaying while standing and even losing his balance. Deputy Winters arrested him for DUI.
Johnson was transported to the DUI testing center, where after reading implied consent warnings, he agreed to submit to a breath test. His breath test results were .102% and .095%. Accordingly, Deputy Winters issued Johnson a DUI citation and suspended his driving privilege. Johnson then requested a formal review of his driver’s license suspension.
Hearing officer Deborah Bush conducted Johnson’s formal review. The only evidence concerning the testing procedures for the Intoxilyzer was the testimony of DUI technician Annie Davis. Johnson did not present his own expert testimony or other evidence. Davis explained that FDLE provides the stock solution that is used in preparing concentrations of different fixed amounts for testing purposes. She testified that she prepared the concentrations as follows:
Q: How do you measure the volumes of water and this stock solution?
A: Well, you’re using a 500 milliliter flask and you put the distilled water in it, you have a pipette at the different levels of a .05, a .10, and a .20. You measure it to the line that’s on each one of those pipettes and add it to the water.
[[Image here]]
Q: Okay. And you do that with your eyes?
A: Right.
*674 After agreeing that the pertinent administrative rules required readings to the third decimal point (.050, .100 and .200), Davis acknowledged that she ultimately relied on the Intoxilyzer itself to verify readings to the third decimal point, because the pipettes only measured the stock solution to the second decimal point, .05, .10 and .20. However, Davis also testified that if she mixed a .10 solution, it would have to fall within FDLE tolerance levels of .095 to .105. According to her, there is no way she could mix an improper solution and get an acceptable test result. In her experience, she has not encountered any out-of-tolerance test results. Further, neither of the agency inspection checklists in the record indicates the existence of any out-of-tolerance test results or any irregularities with inspections on Johnson’s Intoxilyzer.
Hearing officer Bush, in her order, sustained the suspension of Johnson’s driving privilege for six months. However, the circuit court granted Johnson’s petition for writ of certiorari, quashed the hearing officer’s ruling and reinstated Johnson’s driver’s license, ruling as follows:
The concentration of the hand-mixed solutions was never independently determined before the solutions were used to test the machine. As the testimony showed, the technicians did not use known solutions but instead used the machine itself to test whether they had properly mixed the sample solutions. Therefore, the monthly maintenance and testing procedures were not in compliance with the FDLE testing rules. As such, the breathalyzer results were erroneously considered by the hearing officer....
The Department now seeks certiorari review in this court. We grant its petition.
In the instant case, Johnson’s breath test results were .102% and .095%. Under section 316.1934(2)(c), Florida Statutes (1995), a test result of “0.08 percent or more” is “prima facie evidence that the person was under the influence of alcoholic beverages to the extent that his or her normal faculties were impaired.” Thus, his results were well above the statutory minimum.
The circuit court, however, determined that the results were invalid because Davis’ testing of the Intoxilyzer failed to comply with FDLE testing rules. As indicated, the court found that the “concentration of the hand-mixed solutions was never independently determined before the solutions were used to test the machine.” We disagree with the circuit court. The concentration of the hand-mixed solutions used for testing was in fact “independently determined” because Davis explicitly testified that in preparing the solutions she visually measured levels of .05, .10 and .20 of stock solution in a pipette. While it is true that she ultimately used the Intoxi-lyzer to obtain readings to the third decimal point, the fact remains that she had already visually verified the amounts of stock solution in the pipette.
Johnson essentially argues that visual corroboration to the second decimal point is not enough, since Rule llD-8.006(l)(a) ostensibly contemplates testing mixture levels measured to the third decimal point, that is, .050, .100 and .200. We do not agree. Though Rule llD-8.006(l)(a) speaks in terms of the third decimal point, it does not otherwise indicate that a measurement to the second decimal point is insufficient or that one to the third decimal point is actually required. In fact, Rule llD-8.006(l)(a) allows for some leeway when the Intoxilyzer is ultimately tested with the concentrations, as it provides that observed values need only fall within specified ranges for each concentration; for instance, the range for .050 is .045 to .055.
Recent case law supports our conclusion. Observing that Chapter 11D-8 contains no rule providing “for the manner of preparing the simulator solutions used in the field,” State v. Gerena, 4 Fla. L. Weekly Supp. 51, 53 (Hillsborough County Apr. 8, 1996), noted that the operator’s manual for the Intoxilyzer provided an example of “how to mix simulator solutions of 0.050%; 0.100%; 0.150%, by using 5 ml, 10 ml, and 15 ml, respectively, of stock solution.” Gerena did not deem measurements to the second decimal point insufficient, as it then stated, “It follows that using 20 ml of stock solution will yield a 0.200% simulator solution sample.”
*675 In light of the absence of controlling administrative rules, we think that Gerena properly resorted to the procedures set forth in the operator’s manual for guidance. Even to assume arguendo that those procedures constituted insubstantial differences or variations from approved techniques, the test results would not be invalid under section 316.1934(3), Florida Statutes (1995). See Ridgeway v. State, 514 So.2d 418 (Fla. 1st DCA 1987) (failure to make timely inspection of Intoxilyzer did not warrant invalidation of results in absence of evidence that delay had crucial significance constituting substantial deviation from approved methods).
This court’s recent opinion in State v. Friedrich, 681 So.2d 1157, (Fla. 5th DCA 1996), further supports our conclusion. The FDLE chemist in Friedrich testified that in preparing the stock solution, his target is to produce a batch that consists of .1215 grams of ethanol per 210 liters of breath, but he considered a range of .116 to .126 grams to be sufficiently accurate. The defendants in Friedrich argued that the possible additional variation caused by using a low stock solution of .116, when combined with the permitted range of plus or minus .005 allowed under Rule 11D-8.005, exceeded the legally permissible range of accuracy because a high-testing machine could actually be testing plus .008 rather the permitted .005. However, Friedrich ultimately concluded that test results over .082 are presumptively admissible:
A defendant who tests at .083 or above[ j could not be hurt by having a test result read above .08 due to the .003 possible variation caused by the stock solution. Any such theoretical deviation should be deemed insubstantial from the point of view of complying with the rules and regulations and the statutes for tests over .082, as well as from a scientific point of view.
Friedrich suggests that visual measurement of the concentrate in the pipette to the second decimal point is amply sufficient as it deemed a total variation of .008 acceptable for those defendants testing over .082. Since Johnson had breath test results of well over .082, we fail to see how he could have been prejudiced by visual measurement to the second decimal point.
We grant the petition for writ of certiorari and quash the circuit court’s order.
PETITION GRANTED; ORDER QUASHED.
PETERSON, C.J., and W. SHARP, J„ concur.